**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SAP SE and SYBASE, INC., | |
| Plaintiffs, | C.A. No. _____ |
| v. | **JURY TRIAL DEMANDED** |
| TRAYPORT LIMITED, | |
| Defendant. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs SAP SE ("SAP") and Sybase, Inc. (collectively, "Plaintiffs"), by and through their attorneys, for their Complaint for Patent Infringement against Trayport Limited ("Trayport or "Defendant") allege as follows:

## NATURE OF THIS ACTION

1.    This is a civil action for the infringement of U.S. Patent Nos. 7,853,482 (the "'482 Patent"); 7,818,365 (the "'365 Patent"); 7,383,253 (the "'253 Patent"); and 8,549,035 (the "'035 Patent") (collectively, the "Asserted Patents").

## PARTIES

2.    Plaintiff SAP SE is a corporation organized and existing under the laws of Germany that maintains an established place of business at Gietmar-Hopp-Allee 16, Walldorf, Germany, 69190.

3.    Plaintiff Sybase, Inc. is a Delaware corporation, with a principal place of business of 2700 Camino Ramon, Suite 400, San Ramon, California 94583.  Sybase, Inc. is a wholly owned subsidiary of SAP SE.

4. Upon information and belief, Trayport Limited is a private limited company registered in England and Wales, with its registered office at 7th Floor, 9 Appold Street, London EC2A 2AP, United Kingdom.

## JURISDICTION AND VENUE

5. This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has original subject matter jurisdiction under 28 U.S.C. §§ 1331 (federal question) and 1338(a) (action arising under an Act of Congress relating to patents).

6. This Court has personal jurisdiction over Trayport. Trayport conducts business and has committed acts of patent infringement and/or has induced acts of patent infringement by others in this District, and elsewhere in the United States.

7. Upon information and belief, this Court has specific jurisdiction over Trayport because (i) Trayport sells and/or licenses the infringing Accused Instrumentalities (as defined below) to at least one Chicago-based customer, IncubEx, Inc.; (ii) Trayport directs the infringing Accused Instrumentalities to both U.S.-based and, more specifically, Illinois-based customers including for example through its customer IncubEx, Inc., which then promotes the Accused Instrumentalities to customers in Illinois; and (iii) Trayport attends industry conferences in the Northern District of Illinois, including at least the 2022 and 2023 FIA Futures & Options EXPO in Chicago, at which it promoted, demonstrated, offered to sell, and/or sold the Accused Instrumentalities.

8. The exercise of personal jurisdiction by this Court over Trayport is also appropriate because the dispute arises out of and has a substantial connection with Trayport's contacts with this State and its infringement in this State. Upon information and belief in 2022, Trayport partnered with IncubEx to launch The Voluntary Climate Marketplace ("TVCM"), which incorporates and relies on Trayport's Joule—one of the infringing Accused Instrumentalities.

IncubEx, Inc. has a principal place of business in Chicago, Illinois.  Upon information and belief, Trayport has continued working with IncubEx at least since 2022, including selling or licensing the Accused Instrumentalities, such as Joule, to IncubEx for use with TVCM.  In turn, IncubEx advertises TVCM and its use of the Accused Instrumentalities, such as Joule, to customers, including on information and belief customers in the Northern District of Illinois.

9.      Upon information and belief, Trayport intentionally targets Illinois in its efforts to sell or license the Accused Instrumentalities and is aware that its Accused Instrumentalities, such as Joule, reach Illinois.  As a result, the Accused Instrumentalities have been and continue to be purchased, licensed, and/or used by Illinois-based consumers.  Trayport's affirmative acts such as providing demonstrations of and information on the Accused Instrumentalities in person at conferences in Chicago, as well as providing all customers, including Illinois-based customers, with instruction manuals and tutorials for the Accused Instrumentalities have induced, continue to induce, and contribute to the infringement of the Asserted Patents by Defendant's partners, clients, customers, subscribers, and/or end users in Illinois.  The Court's exercise of jurisdiction over Trayport would therefore be fair and reasonable.

10.      Venue is proper in this District because Trayport is a foreign corporation and venue is proper as to a foreign defendant in any district, 28 U.S.C. § 1391(c)(3), and because Trayport has committed acts of infringement, including selling and offering for sale the infringing Accused Instrumentalities in this District.  28 U.S.C. § 1400(b).

**PLAINTIFFS' LEADING TECHNOLOGY**

11.      SAP, including its affiliates such as Sybase, Inc., is a global leader in enterprise applications and business Artificial Intelligence.  For over fifty years, Plaintiffs have been serving their customers by uniting business critical operations spanning finance, procurement, human

resources, supply chain, and customer experience. Plaintiffs have obtained numerous patents for their innovations from the United States Patent and Trademark Office.

12.    Plaintiffs serve a pivotal role in driving the evolution of the global business landscape by exploring and scaling emerging technologies in the business context, building upon the latest app developments, and enabling modern, cloud-native, more-compliant and more-secure software development practices, and providing a human-centric user experience across all devices.

13.    Plaintiffs' product and service innovations span a large variety of products and services, including those related to human capital management, extended planning and analysis, customer experience, and spend management for businesses.

## THE ASSERTED PATENTS

14.    The '482 Patent, titled "Complex prices in bidding," was duly and lawfully issued on December 14, 2010. SAP SE is the owner of all right, title, and interest in the '482 Patent, including the right to sue for past infringement. The '482 Patent is valid and enforceable. A true and correct copy of the '482 Patent is attached as Exhibit 1. The '482 Patent is directed to a technical solution to a technical problem of, e.g., providing for automated control of bidding and permitting the buyer to receive "flexible and complex pricing schemes from the bidders." Ex. 1 at 1:48-50.

15.    The '365 Patent, titled "System, method, and computer program product for online and offline interactive applications on mobile devices," was duly issued on October 19, 2010. Sybase, Inc. is the owner of all right, title, and interest in the '365 Patent, including the right to sue for past infringement. The '365 Patent is valid and enforceable. A true and correct copy of the '365 Patent is attached as Exhibit 2. The '365 Patent is directed to a non-conventional technical solution to a technical problem of, e.g., "synchronizing loosely connected computing devices with data from a plurality of information services and presenting the data in a single paradigm that enables

a user to interact with the data without being connected to a network and update the information services with changes made by the user when the user reconnects to the network." Ex. 2 at 1:45-50.

16.    The '253 Patent, titled "Publish and subscribe capable continuous query processor for real-time data streams," was duly issued on June 3, 2008. Sybase, Inc. is the owner of all right, title, and interest in the '253 Patent, including the right to sue for past infringement. The '253 Patent is valid and enforceable. A true and correct copy of the '253 Patent is attached as Exhibit 3. The '253 Patent is directed to a non-conventional technical solution to a technical problem of, e.g., enabling "query processors that receive data continuously from one or more publishers of data streams in order to push query results as data streams to one or more subscribers continuously." Ex. 3 at 3:11-14.

17.    The '035 Patent, titled "Operational information providers," was duly issued on October 1, 2013. SAP SE is the owner of all right, title, and interest in the '035 Patent, including the right to sue for past infringement. The '035 Patent is valid and enforceable. A true and correct copy of the '035 Patent is attached as Exhibit 4. The '035 Patent is directed to a non-conventional technical solution to a technical problem of, e.g., "using operational information providers to standardize and unify data access to operational data." Ex. 4 at 1:5-9.

## TRAYPORT'S ACCUSED INSTRUMENTALITIES

18.    Upon information and belief, Defendant Trayport provides a network and data platform for wholesale energy markets, enabling its trader, broker and exchange clients to engage in multiple asset classes across over-the-counter (OTC) and cleared markets.

19.    Upon information and belief, Defendant Trayport is the seller and provider of Joule, Autotrader, Data Analytics, Automated Trading, Customer Portal, Tradesignal, Implied Price Calculator, Power Plant Management, Scheduling and Balancing, Internal Marketplace,

Conformance Testing, Energy Market Access, GlobalVision Broker Trader System, GlobalVision Exchange Trading System, Hosted Clearing Links, and Third Party Solutions ("Accused Instrumentalities") in the United States.

20.     Upon information and belief, one of Defendant's Accused Instrumentalities is Joule, a platform offering "an enhanced trading experience across multiple asset classes, OTC, cleared markets and geographies, and it's [sic] optimally configured desktop screen provides access to unique market views, facilitating a route to the liquidity for market participants to view all their venues aggregated into one stack."  https://www.trayport.com/traders/joule/trade-north-american-energy/.

21.     Upon information and belief, Defendant entered into a formal collaboration agreement with UpdataAnalytics to provide an integrated platform for Trayport's customers incorporating Trayport's Joule and UpdataAnalytics' Updata products, allowing mutual customers such as energy traders and brokers to access Updata's suite of charts analytics via links from within Trayport's Joule platform.

22.     Upon information and belief, Defendant controls the operation and integration of third party services, including Updata, into Defendant's software and platforms, including the Accused Instrumentalities. *See* https://www.trayport.com/third-party/.

23.     Upon information and belief, Trayport sells, licenses, offers to sell, and/or offers to license the Accused Instrumentalities, including Joule, to U.S. customers, including those in Illinois, and demonstrates the Accused Instrumentalities, including Joule, at industry events and conferences in the U.S.

## COUNT I
(Direct Infringement of the '482 Patent)

24.    Plaintiffs incorporate by reference and re-allege each of the allegations in Paragraphs 1-23 of this Complaint.

25.    Upon information and belief, Defendant infringes under 35 U.S.C. § 271(a) the '482 Patent, including at least claim 1 of the '482 Patent, literally and/or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing into the United States, without authorization, the Accused Instrumentalities.

26.    For example, claim 1 of the '482 Patent recites "[a] computer-implemented method of managing bid pricing information, comprising: receiving at a computer system transaction information and item data from a buyer; generating with the computer system a bid invitation containing entries relating to the transaction information and item data, and making the bid invitation available to a plurality of potential bidders; receiving, at the computer system, from one or more of the potential bidders bid responses containing a complex pricing structure and corresponding complex pricing amounts, wherein the complex pricing structure is selected by the potential bidders from among a group of multiple pricing structures made available to the potential bidders, and wherein the complex pricing structure is selected and supplied by each potential bidder, and the complex pricing structures supplied by two or more potential bidders include bids with multiple different pricing amounts, and each bidder provides multiple different proposals with each proposal including a set of terms governing the proposal and a set of prices for the proposal; and selecting a winning bidder based at least in part on the complex pricing amounts."

27.    Upon information and belief, the Accused Instrumentalities meet each and every limitation of at least claim 1 of the '482 Patent for at least the reasons outlined in Appendix A attached.

28.     As a result of Defendant's infringement of the '482 Patent, Plaintiffs are entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs fixed by the Court.

29.     Defendant was made aware of the '482 Patent at least as early as November 7, 2024, when SAP sent correspondence identifying the patent as one that Defendant may be interested in licensing for at least Joule and Tradesignal.

30.     Since at least November 7, 2024, when it was made aware of the '482 Patent, Defendant's infringement has been, and continues to be, willful.

<u>**COUNT II**</u>
(Indirect Infringement of the '482 Patent)

31.     Plaintiffs incorporate by reference and re-allege each of the allegations in Paragraphs 1-30 of this Complaint.

32.     Upon information and belief, the Accused Instrumentalities are marketed to, provided to, and/or used by or for Defendant's partners, clients, customers, subscribers, and/or end users across the country and in this District.

33.     Upon information and belief, Defendant has induced and continues to induce others to infringe the '482 Patent, including at least claim 1 of the '482 Patent, under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including, but not limited to Defendant's partners, clients, customers, subscribers, and/or end users, whose use of the Accused Instrumentalities constitutes direct infringement of at least claim 1 of the '482 Patent.  For example, Defendant advertises and has advertised the use of its trading platform across various industries.  *See* https://www.trayport.com/traders/joule/.

34.     In particular, Defendant's actions that aid and abet others such as its partners, clients, customers, subscribers, and/or end users to infringe include providing instruction materials, demonstrations, and training services showing customers how to use the Accused Instrumentalities.  *See* https://www.trayport.com/traders/joule/; Joule Direct User Guide, Version 5, *available at* https://www.balkangashub.bg/storage/content-files/products/user-guides/Joule_Direct_User_Guide.pdf.

35.     After receiving actual notice of the '482 Patent at least as early as November 7, 2024, and no later than the filing of this Complaint, Defendant continued, with specific intent or willful blindness, to induce Defendant's partners, clients, customers, subscribers, and/or end users to infringe the '482 Patent.

36.     Upon information and belief, Defendant has contributorily infringed and continues to contributorily infringe the '482 Patent, including at least claim 1 of the '482 Patent, under 35 U.S.C. § 271(c) by offering to sell, selling, and distributing in the United States the Accused Instrumentalities that infringe the '482 Patent.

37.     As a result of Defendant's indirect infringement of the '482 Patent, Plaintiffs are entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs fixed by the Court.

## **COUNT III**
### (Direct Infringement of the '365 Patent)

38.     Plaintiffs incorporate by reference and re-allege each of the allegations in Paragraphs 1-37 of this Complaint.

39.     Upon information and belief, Defendant infringes under 35 U.S.C. § 271(a) the '365 Patent, including at least claim 1 of the '365 Patent, literally and/or under the doctrine of

equivalents, by making, using, offering for sale, selling, and/or importing into the United States, without authorization, the Accused Instrumentalities.

40.    For example, claim 1 of the '365 Patent recites "[a] method for exchanging data between a plurality of clients and information sources via a server, comprising: (a) obtaining data objects from a plurality of sources, said data objects being in native formats specific to their respective sources; (b) converting said data objects to a common data format, wherein said common data format differs from said native formats; and (c) transmitting said converted data objects in said common data format to said plurality of clients, said clients configured to display said converted data objects in said common data format using a common interface, wherein said common interface operates without regard for said native formats, and wherein said common interface allows manipulation of said data objects in said common data format."

41.    Upon information and belief, the Accused Instrumentalities meet each and every limitation of at least claim 1 of the '365 Patent for at least the reasons outlined in Appendix B attached.

42.    As a result of Defendant's infringement of the '365 Patent, Plaintiffs are entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs fixed by the Court.

43.    Defendant was made aware of the '365 Patent at least as early as the filing of this Complaint.

44.    Since at least the filing of this Complaint, when it was made aware of the '365 Patent, Defendant's infringement has been, and continues to be, willful.

## COUNT IV
### (Indirect Infringement of the '365 Patent)

45.     Plaintiffs incorporate by reference and re-allege each of the allegations in Paragraphs 1-44 of this Complaint.

46.     Upon information and belief, the Accused Instrumentalities are marketed to, provided to, and/or used by or for Defendant's partners, clients, customers, subscribers, and/or end users across the country and in this District.

47.     Upon information and belief, Defendant has induced and continues to induce others to infringe the '365 Patent, including at least claim 1 of the '365 Patent, under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including, but not limited to Defendant's partners, clients, customers, subscribers, and/or end users, whose use of the Accused Instrumentalities constitutes direct infringement of at least claim 1 of the '365 Patent.  For example, Defendant advertises and has advertised the use of its trading platform across various industries.  *See* https://www.trayport.com/traders/joule/.

48.     In particular, Defendant's actions that aid and abet others such as its partners, clients, customers, subscribers, and/or end users to infringe include providing instruction materials, demonstrations, and training services showing customers how to use the Accused Instrumentalities.  *See* https://www.trayport.com/traders/joule/; Joule Direct User Guide, Version 5, *available at* https://www.balkangashub.bg/storage/content-files/products/user-guides/Joule_Direct_User_Guide.pdf.

49.     After Defendant received actual notice of the '365 Patent at least as early as the filing of this Complaint, Defendant continued, with specific intent or willful blindness, to induce Defendant's partners, clients, customers, subscribers, and/or end users to infringe the '365 Patent.

50.     Upon information and belief, Defendant has contributorily infringed and continues to contributorily infringe the '365 Patent, including at least claim 1 of the '365 Patent, under 35 U.S.C. § 271(c) by offering to sell, selling, and distributing in the United States the Accused Instrumentalities that infringe the '365 Patent.

51.     As a result of Defendant's indirect infringement of the '365 Patent, Plaintiffs are entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs fixed by the Court.

## COUNT V
(Direct Infringement of the '253 Patent)

52.     Plaintiffs incorporate by reference and re-allege each of the allegations in Paragraphs 1-51 of this Complaint.

53.     Upon information and belief, Defendant infringes under 35 U.S.C. § 271(a) the '253 Patent, including at least claim 2 of the '253 Patent, literally and/or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing into the United States, without authorization, the Accused Instrumentalities.

54.     For example, claim 2 of the '253 Patent recites "[a] computer-implemented method for providing continuous, real-time query results for a query module in a continuous query-processing system, wherein the query module, after compiled by a computer, is comprised of an assembly of connected primitive operators, the method comprising: receiving a continuous stream of input data for the query module from one or more publishers of data streams; processing the streaming input data on a continuous basis, wherein the streaming input data is processed by the assembly of connected primitive operators to generate output for the query module; and publishing output for the query module to an output data stream, wherein each time output is generated by the

assembly of connected primitive operators from processing input data, such output is published in real-time to such output data stream to provide continuous, real-time query results for the query module, and wherein one or more sources external to the query module may subscribe to such output data stream to receive such real-time query results."

55.    Upon information and belief, the Accused Instrumentalities meet each and every limitation of at least claim 2 of the '253 Patent for at least the reasons outlined in Appendix C attached.

56.    As a result of Defendant's infringement of the '253 Patent, Plaintiffs are entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs fixed by the Court.

57.    Defendant was made aware of the '253 Patent at least as early as the filing of this Complaint.

58.    Since at least the filing of this Complaint, when it was made aware of the '253 Patent, Defendant's infringement has been, and continues to be, willful.

## COUNT VI
### (Indirect Infringement of the '253 Patent)

59.    Plaintiffs incorporate by reference and re-allege each of the allegations in Paragraphs 1-58 of this Complaint.

60.    Upon information and belief, the Accused Instrumentalities are marketed to, provided to, and/or used by or for Defendant's partners, clients, customers, subscribers, and/or end users across the country and in this District.

61.    Upon information and belief, Defendant has induced and continues to induce others to infringe the '253 Patent, including at least claim 2 of the '253 Patent, under 35 U.S.C. § 271(b)

by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including, but not limited to Defendant's partners, clients, customers, subscribers, and/or end users, whose use of the Accused Instrumentalities constitutes direct infringement of at least claim 2 of the '253 Patent. For example, Defendant advertises and has advertised the use of its trading platform across various industries. *See* https://www.trayport.com/traders/joule/.

62.    In particular, Defendant's actions that aid and abet others such as its partners, clients, customers, subscribers, and/or end users to infringe include providing instruction materials, demonstrations, and training services showing customers how to use the Accused Instrumentalities. *See* https://www.trayport.com/traders/joule/; Joule Direct User Guide, Version 5, *available at* https://www.balkangashub.bg/storage/content-files/products/user-guides/Joule_Direct_User_Guide.pdf.

63.    After Defendant received actual notice of the '253 Patent at least as early as the filing of this Complaint, Defendant continued, with specific intent or willful blindness, to induce Defendant's partners, clients, customers, subscribers, and/or end users to infringe the '253 Patent.

64.    Upon information and belief, Defendant has contributorily infringed and continues to contributorily infringe the '253 Patent, including at least claim 2 of the '253 Patent, under 35 U.S.C. § 271(c) by offering to sell, selling, and distributing in the United States the Accused Instrumentalities that infringe the '253 Patent.

65.    As a result of Defendant's indirect infringement of the '253 Patent, Plaintiffs are entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs fixed by the Court.

## COUNT VII
(Direct Infringement of the '035 Patent)

66.    Plaintiffs incorporate by reference and re-allege each of the allegations in Paragraphs 1-65 of this Complaint.

67.    Upon information and belief, Defendant infringes under 35 U.S.C. § 271(a) the '035 Patent, including at least claim 1 of the '035 Patent, literally and/or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing into the United States, without authorization, the Accused Instrumentalities.

68.    For example, claim 1 of the '035 Patent recites "[a] method of retrieving operational data, the method comprising: at a front-end unit, generating a query for retrieving requested operational data, including real-time operational data; responsive to said generating, sending an operational information provider from the front-end unit to the back-end unit, wherein the operational information provider is sent as a query interface to describe the query to identify real-time operational data to be retrieved from the back-end unit and to specify a retrieval method for the back-end unit that includes data request and data response operations to be performed by the back-end unit; responsive to receiving the data request and response operations at the back-end unit, executing at least one business operation at the back-end unit, wherein the at least one business operation performs analysis and data mining operations to generate the requested operational data; and receiving at the front-end unit from the back-end unit the requested operational data, including the real-time operational data."

69.    Upon information and belief, the Accused Instrumentalities meet each and every limitation of at least claim 1 of the '035 Patent for at least the reasons outlined in Appendix D attached.

70.     As a result of Defendant's infringement of the '035 Patent, Plaintiffs are entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs fixed by the Court.

71.     Defendant was made aware of the '035 Patent at least as early as the filing of this Complaint.

72.     Since at least the filing of this Complaint, when it was made aware of the '035 Patent, Defendant's infringement has been, and continues to be, willful.

**COUNT VIII**
(Indirect Infringement of the '035 Patent)

73.     Plaintiffs incorporate by reference and re-allege each of the allegations in Paragraphs 1-72 of this Complaint.

74.     Upon information and belief, the Accused Instrumentalities are marketed to, provided to, and/or used by or for Defendant's partners, clients, customers, subscribers, and/or end users across the country and in this District.

75.     Upon information and belief, Defendant has induced and continues to induce others to infringe the '035 Patent, including at least claim 1 of the '035 Patent, under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including, but not limited to Defendant's partners, clients, customers, subscribers, and/or end users, whose use of the Accused Instrumentalities constitutes direct infringement of at least claim 1 of the '035 Patent.  For example, Defendant advertises and has advertised the use of its trading platform across various industries.  *See* https://www.trayport.com/traders/joule/.

76.     In particular, Defendant's actions that aid and abet others such as its partners, clients, customers, subscribers, and/or end users to infringe include providing instruction materials, demonstrations, and training services showing customers how to use the Accused Instrumentalities.  *See* https://www.trayport.com/traders/joule/; Joule Direct User Guide, Version 5, *available at* https://www.balkangashub.bg/storage/content-files/products/user-guides/Joule_Direct_User_Guide.pdf.

77.     After Defendant received actual notice of the '035 Patent at least as early as the filing of this Complaint, Defendant continued, with specific intent or willful blindness, to induce Defendant's partners, clients, customers, subscribers, and/or end users to infringe the '035 Patent.

78.     Upon information and belief, Defendant has contributorily infringed and continues to contributorily infringe the '035 Patent, including at least claim 1 of the '035 Patent, under 35 U.S.C. § 271(c) by offering to sell, selling, and distributing in the United States the Accused Instrumentalities that infringe the '035 Patent.

79.     As a result of Defendant's indirect infringement of the '035 Patent, Plaintiffs are entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs fixed by the Court.

## DEMAND FOR A JURY TRIAL

Plaintiffs hereby demand trial by jury on all claims and issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgement in their favor and against Defendant, and respectfully request the following relief:

A. A judgment in favor of Plaintiffs that Defendant has directly and/or indirectly infringed and is infringing, either literally and/or under the doctrine of equivalents, one or more claims of the Asserted Patents;

B. A judgment in favor of Plaintiffs that Defendant's infringement of the Asserted Patents has been willful, and that the Defendant's continued infringement of the Asserted Patents is willful;

C. A judicial determination of the conditions for Defendant's future infringement, such as an ongoing royalty;

D. A judgment and order requiring Defendant to pay Plaintiffs damages, costs, expenses, and pre-judgment and post-judgment interest for Defendant's infringement;

E. A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiffs their reasonable attorneys' fees against Defendant; and

F. All other relief that the Court deems just and proper.

Dated: January 16, 2025

By: */s/ Jeffrey Bushofsky*

Jeffrey Bushofsky (IL Bar No. 6224593)
191 North Wacker Drive, 32nd Floor
Chicago, IL 60606
Telephone: (312) 845-1200
jeffrey.bushofsky@ropesgray.com

James R. Batchelder (*pro hac vice* to be filed)
James L. Davis, Jr. (IL Bar No. 6286015)
**ROPES & GRAY LLP**
1900 University Avenue, 6th Floor
East Palo Alto, CA 94303-2284
Telephone: (650) 617-4000
james.batchelder@ropesgray.com
james.l.davis@ropesgray.com

Kathryn C. Thornton (*pro hac vice* to be filed)
2099 Pennsylvania Avenue,

N.W. Washington, D.C. 20006
Telephone: (202) 508-4600
kathryn.thornton@ropesgray.com

Abed Balbaky (*pro hac vice* to be filed)
Meredith Cox (*pro hac vice* to be filed)
1211 Avenue of the America
New York, NY 10036
Telephone: (212) 596-9062
abed.balbaky@ropesgray.com
meredith.cox@ropesgray.com

*Attorneys for Plaintiffs SAP SE and Sybase Inc.*